# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

WENDY S. MULQUEEN and
BRIAN G. MULQUEEN,

                                     Plaintiffs,

       v.                                         6:22-CV-1301
                                                     (TJM/ATB)

HERKIMER COUNTY CHILD PROTECTIVE
SERVICES, et al.,

                                     Defendants.
_____

WENDY S. MULQUEEN, Plaintiff, pro se
BRIAN G. MULQUEEN, Plaintiff, pro se

ANDREW T. BAXTER, U.S. Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

On December 5, 2022, the plaintiffs filed a complaint pursuant to 42 U.S.C. § 1983. (Dkt. No. 1) ("Compl."). Plaintiffs also moved to proceed in forma pauperis ("IFP") (Dkt. Nos. 2, 3), and for appointment of counsel (Dkt. Nos. 4, 5). On January 13, 2023, I recommended that plaintiffs' motions to proceed IFP be denied, and the complaint be dismissed without prejudice to plaintiffs submitting the filing fee, based on the representations made in plaintiffs' IFP applications.[1] (Dkt. No. 9). In particular, this court relied on the plaintiffs' reported income in denying them IFP status, as it appeared to exceed the federal poverty guidelines and did not suggest that payment of the filing fee in this matter would impose a "serious hardship" on them. (*Id.*). Plaintiffs

_____

[1] I also ordered that plaintiffs' motions for appointment of counsel be denied without prejudice. (Dkt. No. 9).

subsequently filed objections to my recommendation with the district court, and submitted additional information concerning their financial status. (Dkt. Nos. 10, 11, 12, 13). On June 13, 2023, upon review of my recommendation and in consideration of the plaintiffs' objections, U.S. Senior District Court Judge Thomas J. McAvoy recommitted this matter back to me with instructions to allow plaintiffs to submit updated, accurate, and complete IFP applications. (Dkt. No. 15). Plaintiffs submitted their updated IFP applications on June 27, 2023, which are now before me pending review. (Dkt. Nos. 16, 17).

## I.   **IFP Applications**

In order to proceed IFP in federal court, the court must be satisfied by plaintiffs' affidavits that they are unable to pay the "cost of these proceedings." (Dkt. Nos. 16 at 1; 17 at 1); 28 U.S.C. § 1915. After reviewing plaintiffs' updated applications and supporting documents, this court finds that plaintiffs are financially eligible for IFP status.

However, in addition to determining whether plaintiffs meet the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S.

2

319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Ashcroft*, 556 U.S. at 678). A pleading that contains allegations that "'are so

vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)). The court will now turn to a consideration of the plaintiffs' complaint under the above standards.

## II.   **Complaint**

Plaintiffs' allegations stem from the investigation of child abuse claims against them by defendant Herkimer County Child Protective Services ("CPS") and its employees. According to the complaint, on June 16, 2022, defendant Michelle Coddington, a senior case worker with CPS, came to the plaintiffs' home to investigate a "false" claim of abuse made by the plaintiffs' 16-year-old daughter, I.M. (Compl. at 1). Plaintiffs allege that I.M. had actually started a physical altercation with her mother, plaintiff Wendy Mulqueen. (*Id.*). The complaint states that the defendants "searched plaintiff[s'] home on all levels . . . then questioned . . . I.M. as well as plaintiffs['] five other children." (*Id.*).

On June 18, 2022, defendant Ashley DiFlillippo, a CPS case worker, placed I.M. and her son, G.J., plaintiffs' grandson, out of the home with a friend of I.M.'s "against plaintiff[s'] consent under false claims of a verbal altercation." (*Id.*). Ms. DiFlillippo informed plaintiffs that I.M. and G.J. would be returning home two days later, on June 20th. (*Id.*). However, neither I.M. nor G.J. returned home on that date. Instead, plaintiffs state that the defendants "authorized I.M. and G.J. to leave the county without plaintiffs' consent and placed them "in an inappropriate home that contained an individual who exhibits sexually explicit behavior." (*Id.*). Plaintiffs allege that there

4

was no "emergency hearing, no warrant, no court order without due process," and that the defendants "seized without . . . compelling circumstances." (*Id.*).

Plaintiffs allege that defendants failed their duty to provide services or offer service to assist with I.M.'s behavior. (Compl. at 2). In addition, plaintiffs allege the following "failures" on the part of defendants: failure to inform plaintiffs of I.M. and G.J.'s whereabouts for an extended period; failure to provide medical information "with I.M. being pregnant at the time[;]" failure to return or answer numerous phone calls; interference with plaintiffs' ability to file police reports concerning I.M.'s status; and preventing plaintiffs from filing a statutory rape charge against I.M.'s adult boyfriend. (*Id.*). Plaintiffs allege that the defendants "falsified documentation and information to the court . . . . [and] exaggerated falsified information." (*Id.*). They claim that they did not see I.M. or G.J. from June 18, 2022, up until, at least, the time they filed their complaint on December 5, 2022. (*Id.*).

Plaintiffs allege violations of their First, Fourth, and Fourteenth Amendment rights by the defendants. (Compl. at 4-6). In their prayer for relief, plaintiffs request an "investigation into the defendants . . . for violating the civil rights of parents in Herkimer County to prevent this from happening to other families." (Compl. at 6). Plaintiffs ask the court to "hold the defendants . . . accountable for their actions[,]" and "prevent defendants . . . from falsifying information/documentation and illegally detaining or taking children from their families." (*Id.*). Plaintiffs additionally seek $500,000.00 in damages. (*Id.*).

## DISCUSSION

### III. <u>Subject Matter Jurisdiction</u>

#### A. Legal Standards

##### 1. *Younger* Abstention

Under the *Younger* abstention doctrine, initially articulated in *Younger v. Harris*, 401 U.S. 37 (1971), federal courts are forbidden from enjoining ongoing state proceedings. *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 100 (2d Cir. 2004); *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). The Supreme Court has clarified the three circumstances in which courts should abstain under *Younger*: (1) state criminal prosecutions; (2) civil enforcement proceedings; and (3) civil proceedings that implicate a state's interest in enforcing the orders and judgments of its courts. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-7 (2013); *Schorr v. DoPico*, 686 F. App'x 34, 36 (2d Cir. 2017) (summary order). A "state-initiated proceeding to gain custody of children allegedly abused by their parents" falls within the second category. *Sprint*, 571 U.S. at 79 (citing *Moore v. Sims*, 442 U.S. 415, 419-420 (1979)).

The Court considers three additional factors before applying *Younger* abstention: whether, "(1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo*, 351

6

F.3d at 75; *Falco v. Justices of Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015); *see Lowell v. Vermont Dep't of Child. & Fams.*, 835 F. App'x 637, 639 (2d Cir. 2020), as amended (Dec. 15, 2020) (summary order) ("after applying the categorical *Sprint* approach, this court will consider three additional, non-dispositive factors to determine whether abstention is appropriate").

### 2.   *Rooker-Feldman* Doctrine

"The *Rooker-Feldman* doctrine bars 'federal courts from exercising jurisdiction over claims brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' " *Walker v. Fam. Ct. Judge Catherine Cholakis,* No. 1:19-CV-1288(LEK/CFH), 2020 WL 3503158, at *3 (N.D.N.Y. June 29, 2020) (quoting *Sykes v. Mel S. Harris and Assoc. LLC*, 780 F.3d 70, 94 (2d Cir. 2015)). "[T]he *Rooker-Feldman* doctrine has four requirements: (1) the plaintiff must have lost in state court; (2) the loss must have occurred before the district court proceedings commenced; (3) the plaintiff must complain of injuries caused by a state court judgment; and (4) the plaintiff must invite district court review and rejection of that judgment." *Id*. (citing *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005)).

The Second Circuit recently addressed the "'narrow ground occupied by *Rooker-Feldman*,'" and emphasized the doctrine's application to "'limited circumstances.'"

7

*Hunter v. McMahon*, ___ F. 4th ___, No. 21-1473, 2023 WL 4671281, at \*3 (2d Cir. July 21, 2023) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Specifically, the Court reiterated that *Rooker-Feldman* applies "only after state-court proceedings have 'ended[,]'" and that the doctrine " 'does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.' " *Id.* (quoting *Exxon Mobil*, 544 U.S. at 284 & 291); *see also Lance v. Dennis,* 546 U.S. 459, 466, (2006) ("*Rooker-Feldman* is not simply preclusion by another name" but "applies only in limited circumstances where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court.") (internal quotation marks and citation omitted). Despite the Supreme Court's "efforts to return *Rooker-Feldman* to its modest roots," " 'lawyers continue to invoke the rule and judges continue to dismiss federal actions under it' beyond the modest circumstances in which it applies." *Id.* (quoting *Vanderkodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 405 (6th Cir. 2020)).

### 3. Domestic Relations Abstention

Domestic relations is "an area of law that federal courts and Congress leave almost exclusively to state law and state courts." *Khalid v. Sessions*, 904 F.3d 129, 133 (2d Cir. 2018); *see Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (while rare instances arise in which it is necessary to answer a substantial federal

question that transcends or exists apart from the family law issue, "in general it is appropriate for the federal courts to leave delicate issues of domestic relations to the state courts" (internal citation omitted)); *see also Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) ("federal courts may properly abstain from adjudicating such actions in view of the greater interest and expertise of state courts in this field"). Federal district courts' consistent refusal to intervene in child custody cases "is supported by the Supreme Court's longstanding recognition — in a non-diversity case involving a child custody dispute — that '[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States.' " *Deem v. DiMella-Deem*, 941 F.3d 618, 624 (2d Cir. 2019) (quoting *In re Burrus*, 136 U.S. 586, 593-94 (1890)). "Accordingly, to the extent that [a] Plaintiff challenges the child custody results of the Family Court proceedings, this Court is without jurisdiction to review such matters." *Washington v. Williams*, No. 19-CV-00289, 2019 WL 1876787, at *2 (E.D.N.Y. Apr. 26, 2019) (the Court lacks subject matter jurisdiction over plaintiff's claims that the state court judge violated her rights during custody and neglect proceedings).

## B. Analysis

It is unclear from the complaint to what extent the issue of plaintiffs' custody over I.M. (and, perhaps, G.J.) was eventually brought and adjudicated before family court or any other relevant state tribunal. The crux of plaintiffs' complaint appears to

be that their child and grandchild were removed from their custody "without . . . an emergency hearing or court order," and that the defendants prevented plaintiffs from filing police reports pertaining to their daughter. (Compl. at 5-6).  However, plaintiffs also generally allege that the defendants have "falsified documentation and information to the court." (Compl. at 6).  To the extent that the plaintiffs' complaint contains allegations that are aimed at changing or challenging the results of an ongoing domestic proceeding or final custody decree, these claims are subject to dismissal for lack of subject matter jurisdiction based on the aforementioned doctrines. Federal courts must "abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings," *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002), and "only the U.S. Supreme Court—and not lower federal courts—may review and reject state-court decisions under 28 U.S.C. § 1257." *Green v. Mattingly*, 585 F.3d 97, 102-03 (2d Cir. 2009) (internal quotations omitted). In challenging the results of any custody proceedings concerning I.M. and/or G.J., plaintiffs are asking this court to intercede in "a matter rightfully reserved for state courts," *McKnight v. Middleton*, 699 F. Supp. 2d 507, 520 (E.D.N.Y. Mar. 29, 2010), when there is nothing apparent which would preclude plaintiffs from appealing the decisions they challenge in state court.  Accordingly, plaintiffs' claims seeking injunctive and/or declaratory relief should be dismissed without prejudice, but without leave to amend in this court.

Plaintiffs' complaint also contains allegations seeking compensation for injuries plaintiffs allege they sustained due to unconstitutional actions taken by defendants during the removal of their child and grandchild.  Because "[f]ederal courts do have jurisdiction to decide tort, contract or civil rights questions in cases arising out of a domestic relations context when the underlying domestic relations issues are not in dispute[,]" plaintiffs' claims for damages are not barred for lack of subject matter jurisdiction under *Younger* or *Rooker-Feldman*.  *McArthur v. Bell*, 788 F. Supp. 706, 708 (E.D.N.Y. Apr. 6, 1992); *see also McNeil v. HCDSS*, No. 6:18-CV-631 (MAD/TWD), 2018 WL 6173983, at *4 (N.D.N.Y. Aug. 17, 2018) ("[B]ecause the *Younger* abstention does not apply to claims for monetary damages . . . the Court will proceed to consider Plaintiffs' claims for damages under § 1983."); *Hunter v. McMahon,* 2023 WL 4671281 at *6 (emphasizing the "causal-relationship" requirement necessary to invoke the *Rooker-Feldman* doctrine, and explaining that it "does *not* bar claims based on an opponent's misconduct that *precedes* a state court proceeding,  if the plaintiffs' alleged injuries were merely *ratified* by the state-court judgments rather than *caused* by them.") (quoting *Dorce v. City of New York*, 2 F.4th 82, 104 (2d Cir. 2021) (emphasis in original).  However, the domestic relations abstention doctrine may bar plaintiff's claims for damages, to the extent those claims challenge the results of custody proceedings in family court, so long as there was no obstacle to the full and fair determination of the custody issue in the state court. *See Santos v. Syracuse Police*

*Dep't*, No. 5:22-CV-1102 (MAD/ATB), 2022 WL 16949542, at *7, 9 (N.D.N.Y. Nov. 15, 2022) ("any claim of plaintiff predicated on the Family Court proceedings relating to the order of protection against him and the custody of his daughter would be subject to dismissal under the domestic relations abstention doctrine, as articulated in the Second Circuit's *Deem* cases."),[2] *report and recommendation adopted*, 2023 WL 3612842 (N.D.N.Y. May 24, 2023); *cf. Cegalis v. Trauma Institute*, No. 2:19-CV-153, 2021 WL 825405, at *4 (D. Vt. Mar. 4, 2021) ("Plaintiff's abuse of process claim does not fall under the narrow domestic relations exception where plaintiff has not asked to change the results of the child custody proceedings.")

---

[2] **Error! Main Document Only.***Deem v. DiMella-Deem*, 941 F.3d at 623-25 ("*Deem I*") re-affirmed the vitality of domestic relations abstention doctrine articulated in *American Airlines*. In *Deem I* the plaintiff sued his estranged wife and others under Section 1983, for damages and injunctive relief, alleging that they conspired to maliciously prosecute him and violate his right to intimate association with his children by seeking and obtaining a temporary order of protection prohibiting him from contacting his children. *Deem I*, 941 F.3d at 620. The Second Circuit concluded that the district court properly abstained under *American Airlines* because Deem's claims were, "at a minimum, on the verge of being matrimonial in nature" and that there was "no obstacle to their full and fair determination in state courts." *Id*. at 623. In a second lawsuit, the same plaintiff again sued his estranged wife and others, for damages and injunctive relief, for obtaining an extension of the temporary order of protection from the family court, which allegedly deprived plaintiff of his due process rights by preventing him from seeing his children and gaining access to his guns. *Deem v. DiMella-Deem*, 800 F. App'x 62, 62-63 (2d Cir.), *cert. denied*, __ U.S. __, 141 S. Ct. 244 (2020) ("*Deem II*"). The Second Circuit in *Deem II* affirmed the dismissal of this action, again applying the domestic relations abstention doctrine. *Id*. *See also See Cleary v. Macvicar*, 813 F. App'x 12, 14 (2d Cir. 2020) (dismissal was appropriate on the basis of the domestic relations abstention because plaintiff's claims, which were rooted in his disagreement with the Connecticut Superior Court's order regarding child custody and visitation, were, at a minimum, 'on the verge of being matrimonial in nature'); *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 39 (2d Cir. 2021) (affirming district court's abstention from exercising jurisdiction over complaint alleging that judge improperly awarded custody to child's father).

## IV.   **Personal Involvement**

### A.   **Legal Standards**

It has long been established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983[,]" and supervisory officials may not be held liable merely because they held a position of authority. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). In *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), the Second Circuit articulated standards for courts to use when determining personal involvement or supervisory liability.[3]

However, after the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the factors articulated in Colon were called into question. Recently, pursuant to *Iqbal*, and in the context of the appeal of a qualified immunity issue, the Second Circuit

---

[3] These factors were:

> (1) the defendant participated directly in the alleged constitutional violation;
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.

13

has specifically revised its standard for determining personal involvement or supervisory liability, finding that the *Colon* factors are no longer controlling and articulating the proper standard for the courts in this circuit to utilize. *Tangreti v. Bachmann*, 983 F.3d 609, 614-19 (2d Cir. 2020).

Joining other circuits, the Second Circuit held that, after *Iqbal*, there is no "special" rule for supervisory liability. *Id*. at 618.

> Instead, a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 . . . . "The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue" because the elements of different constitutional violations vary. Id. The violation must be established against the supervisory official directly.

*Id.* (quoting *Iqbal*, 556 U.S. at 676). The supervisor must have committed the violation him or herself, not by the supervision of others who committed the violation. *Id*. Likewise, the supervisor must personally display the requisite state of mind, depending on the violation at issue. *Id*.

**B.    Analysis**

Plaintiffs have identified Lisa Burdock as a defendant in the instant action, who they describe to be a "Supervisor" with Herkimer County Child Protective Services. (Compl. at 1, 3). There are, however, no allegations describing conduct by Ms. Burdock giving rise to plaintiffs' alleged constitutional injuries. In fact, Ms. Burdock is not referenced anywhere throughout the plaintiff's factual assertions. (*Id*. at 1-2). As

14

*Tangreti* and *Iqbal* made clear, a supervisor cannot be found liable alone by reason of her supervision of others who committed a violation. Accordingly, plaintiffs have failed to allege this defendant's personal involvement for purposes of § 1983, and the complaint should be dismissed as against her.

## V.   **Municipal Liability**

### A.   **Legal Standards**

A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *LaVertu v. Town of Huntington*, No. 13-CV-4378, 2014 WL 2475566, at *3 (E.D.N.Y. Apr. 4, 2014) (citing inter alia *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, (2010)), *report recommendation adopted in relevant part*, 2014 WL 2506217 (E.D.N.Y. June 2, 2014). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

"The existence of a municipal policy that gives rise to *Monell* liability can be established in four ways: (1) a formal policy endorsed by the municipality; (2) actions directed by the government's 'authorized decisionmakers' or 'those who establish governmental policy;' (3) a persistent and widespread practice that amounts to a custom

of which policymakers must have been aware; or (4) a constitutional violation resulting from policymakers' failure to train municipal employees[.]" *Deferio v. City of Syracuse*, 770 F. App'x 587, 590 (2d Cir. 2019)(cleaned up). "Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of his constitutional rights. *Id.* (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)); *see also Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (holding that plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged").

A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985)) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* "). To satisfy the statute, the municipality's "failure to train its employees in a relevant respect must amount to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)). "Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.'" *Id.* (quoting *Canton*, 489 U.S. at 389).

16

**B.     Analysis**

Plaintiffs have named Herkimer County Child Protective Services as a defendant
in their complaint, which the court will construe liberally to constitute a cause of action
against Herkimer County.[4]  Plaintiffs have not, however, alleged any formal policy,
widespread practice, or failure to provide adequate training that would satisfy the
pleading requirement articulated above.  Instead, plaintiffs generally assert that this
defendant should be held liable for the distinct injuries allegedly imposed on plaintiffs
by county employees.  As discussed, a municipality may not be held liable under § 1983
"solely because it employs a tortfeasor." *Cowan v. City of Mt. Vernon*, 95 F. Supp. 3d
624, 643 (S.D.N.Y. 2015) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403
(1997)).  Moreover, "a custom or policy cannot be shown by pointing to a single
instance of unconstitutional conduct by a mere employee of the [municipality.]" *Newton
v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. July 16, 2008); *see also City
of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of
unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof
of the incident includes proof that it was caused by an existing, unconstitutional

---

[4]  Plaintiffs' claims against this defendant would be further subject to dismissal because a § 1983
action against an agency of a municipality, such as a county child protective services unit, is not a
viable claim as it has no separate legal identity apart of the municipality itself. *See Friedman v. N.Y.C.
Admin. For Children's Servs.,* 502 F. App'x 23, 27 n. 3 (2d Cir. 2012) (municipal agencies are not
suable entities); *Mulvihill v. New York,* 956 F. Supp. 2d 425, 427 (W.D.N.Y. 2013) (dismissing § 1983
claim against Ontario County Department of Social Services because it is not a suable entity).

municipal policy, which policy can be attributed to a municipal policymaker.");

*Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."). Accordingly, plaintiff has failed to state a viable *Monell* claim.

## VI.   Fourth Amendment

Liberally construed, plaintiffs' complaint alleges that in removing I.M. and G.J. from their home, defendants violated their Fourth Amendment right to be free from illegal searches and seizures. It is, however, well-settled that "Fourth Amendment rights are personal rights, which, like some other constitutional rights, may not be vicariously asserted." *Tenenbaum v. Williams*, 193 F.3d 581, 593 n. 13 (2d Cir. 1999) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)). In this case, it is clear that any alleged seizure occurred as to the minor children I.M. and G.J. *See Kia P. v. McIntyre*, 235 F.3d 749, 762 (2d Cir. 2000) ("[T]he Fourth Amendment applies in the context of the seizure of a child by a government-agency official during a civil child-abuse or maltreatment investigation."). Accordingly, only the children—not the plaintiffs—may assert a violation of this right. *See Southerland v. City of New York*, 667 F.3d 87, 103 (2d Cir. 2012) ("A Fourth Amendment child-seizure claim belongs only to the child, not to the parent."), *amended by*, 681 F.3d 122 (2d Cir. 2012); *Graham v. City of New York*, 869 F. Supp. 2d 337, 355 (E.D.N.Y. 2012) ("While a Fourth Amendment

claim may be brought by a parent on behalf of a child, parents do not have their own Fourth Amendment right to be free from a child's court-approved removal.").

Moreover, it is a "well-established general rule in this Circuit that a parent not admitted to the bar cannot bring an action *pro se* in federal court on behalf of his or her child[.]" *Johnson v. City of New York*, No. 22-2096, 2023 WL 3607219, at *2 (2d Cir. May 24, 2023) (quoting *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005)). Therefore, to the extent plaintiffs have pleaded a Fourth Amendment claim on their own behalf, or attempt to plead such a claim on behalf of I.M. and/or G.J., this claim should be dismissed.

## VII. __First Amendment__

### 1.   **Legal Standards**

The right to intimate association "guarantees an individual the choice of entering into an intimate relationship free from undue intrusion by the state." *Sanitation & Recycling Indus. v. City of New York*, 107 F.3d 985, 996 (2d Cir.1997) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984)). This right has been extended to relationships that "attend the creation and sustenance of a family-marriage, childbirth, the raising and education of children and cohabitation with one's relatives." *Sanitation & Recycling Indus.*, 107 F.3d at 996 (quoting *Roberts*, 468 U.S. at 619).

"The Supreme Court has recognized a right of association with two distinct components—an individual's right to associate with others in intimate relationships and

a right to associate with others for purposes of engaging in activities traditionally protected by the First Amendment, such as speech and other expressive conduct." *Id.* (citing *Roberts*, 468 U.S. at 617-18). Accordingly, the right of intimate association appears to "derive[ ] from both the First and Fourteenth Amendments." *Lowery v. Carter*, No. 07 Civ. 7684, 2010 WL 4449370, at *2 (S.D.N.Y. Oct. 21, 2010) (citing *Roberts*, 468 U.S. at 617-19) (additional citation omitted). "Where a plaintiff is allegedly retaliated against for the First Amendment activities of a family member and asserts a claim based on intimate association, the courts in this Circuit have considered the claim as deriving from the First Amendment." *Agostino v. Simpson*, No. 08-CV-5760, 2008 WL 4906140, at *9 (S.D.N.Y. Nov. 14, 2008) (citing cases); *see also Licorish-Davis v. Mitchell*, No. 12-CV-601, 2013 WL 2217491, at *6 (S.D.N.Y. May 20, 2013) (noting that courts have "at times analyzed the right to intimate association as one emanating from the First Amendment"); *Garten v. Hochman*, No. 08 Civ. 9425, 2010 WL 2465479, at *3 (S.D.N.Y. June 16, 2010) ("Courts in this circuit have acknowledged that a First Amendment right to intimate association is implicated where a plaintiff is allegedly retaliated against for the First Amendment activities of a family member.").

"Where the intimate association right at issue is tied to familial relationships and is independent of First Amendment retaliation concerns, however, the Second Circuit has employed an analysis under the framework of the Fourteenth Amendment right to

substantive due process." *Garten*, 2010 WL 2465479, at *4 (citing cases); *see also Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002) (stating that the right to intimate association receives protection as "a fundamental element of personal liberty" grounded in substantive due process under the Fourteenth Amendment); *Lowery*, 2010 WL 4449370, at *2 ("When the right of intimate association does not implicate any First Amendment speech or retaliation concerns . . . the court must analyze the case exclusively as a Fourteenth Amendment substantive due process claim.").

### 2.   Analysis

Plaintiffs allege, generally, that the defendants violated their First Amendment rights. Although the plaintiffs have not provided significant detail in conjunction with their First Amendment claim, their claim, as currently stated, does not implicate any speech or retaliation concerns. Because the plaintiffs' claim, at its core, concerns their familial relationship with their children, it is appropriately analyzed under the framework of Fourteenth Amendment substantive due process, as discussed below.

## VIII. <u>Fourteenth Amendment</u>

### A.   Legal Standards[5]

---

[5] This discussion of the applicable law is taken from U.S. Magistrate Judge Thérèse Wiley Dancks' cogent summary in *McNeil v. HCDSS*, No. 6:18-CV-0631(MAD/TWD), 2018 WL 6173983 (N.D.N.Y. Aug. 17, 2018), which report-recommendation was adopted in its entirety by U.S. District Judge Mae A. D'Agostino in *McNeil v. Riente*, No. 6:18-CV-0631(MAD/TWD), 2018 WL 4895848 (N.D.N.Y. Oct. 9, 2018).

### 1.    Procedural Due Process

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012) (citation omitted). Parents have a fundamental liberty interest in the "care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Kia P. v. McIntyre*, 235 F.3d 749, 759 (2d Cir. 2000); *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999). However, the government has a compelling interest in the welfare of children, and the relationship between parent and child may be investigated and terminated by the state provided constitutionally adequate procedures are followed. *Santosky v. Kramer*, 455 U.S. 745, 766 (1982). "Notwithstanding the existence of this constitutional right, the right to family integrity does not include a constitutional right to be free from child abuse investigations." *Roach v. Clark*, No. 5:15-CV-408 (LEK/ATB), 2015 WL 4067504, at *10 (N.D.N.Y. July 2, 2015) (quotation marks and citation omitted).

Accordingly, as "a general rule . . . before parents may be deprived of the care, custody, or management of their children without their consent, due process–ordinarily a court proceeding resulting in an order permitting removal – must be accorded to them." *Nicholson v. Scoppetta*, 344 F.3d 154, 171 (2d Cir. 2003) (quotation marks and citation omitted). The failure to afford parents pre-removal due process may give rise to

a Fourteenth Amendment procedural due process claim. *See Tenenbaum*, 193 F.3d at 593.

### 2.    Substantive Due Process

Parents also have a "substantive right under the Due Process Clause to remain together with their children without the coercive interference of the awesome power of the state." *Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012) (quotation marks, citation, and alterations omitted). "Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Southerland*, 680 F.3d at 151 (quotation marks and citation omitted).

To state a claim for a violation of this substantive due process right of custody, a plaintiff must demonstrate that the state action depriving him or her of custody was "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Tenenbaum,* 193 F.3d at 600. It is not enough that the government act be "incorrect or ill-advised"; it must be "conscience-shocking." *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995). "Only the most egregious official conduct can be said to be arbitrary in the constitutional sense and therefore unconstitutional." *Tenenbaum*, 193 F.3d at 600 (quotation marks omitted).

Absent truly extraordinary circumstances, a brief deprivation of custody is insufficient to state a substantive due process custody claim. *Nicholson v. Scoppetta*, 344 F.3d 154, 172 (2d Cir. 2003). Such temporary deprivations do "not result in the parents' wholesale relinquishment of their right to rear their children," so they are not constitutionally outrageous or conscience-shocking. *Id.* (alternations omitted). Thus, "while a procedural due process claim challenges the procedure by which removal is effected, a substantive due process claim challenges the fact of [the] removal itself." *Bruker v. City of New York*, 92 F. Supp. 2d 257, 266-67 (S.D.N.Y. 2000).

Like a procedural due process claim, a plaintiff must establish loss or an interruption of custody to state a substantive due process claim. *See Oglesby v. Eikszta*, 499 F. App'x 57, 60-61 (2d Cir. 2012) (finding no substantive due process violation where "plaintiffs admit that they never lost custody of any of their children"); *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 276 (2d Cir. 2011) ("Where there is no actual loss of custody, no substantive due process claim can lie.") (citations omitted).

### B.   Analysis

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the court finds that plaintiffs' Fourteenth Amendment procedural and substantive due process claims against defendants Michelle Coddington and Ashley

24

DiFlillippo, as alleged in the complaint and accompanying exhibits,[6] survive sua sponte review and require a response.  In making this recommendation, the court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.[7]

## IX.   <u>Opportunity to Amend</u>

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile.  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  The court is recommending that plaintiffs' Fourteenth Amendment due process claims against defendants Michelle Coddington and Ashley DiFlillippo survive initial review.  For the reasons previously set forth plaintiffs' claims for injunctive and/or declaratory relief should be dismissed without prejudice, but without the opportunity to amend.  Plaintiffs' Fourth Amendment claim should be dismissed with prejudice because it is personal to I.M. and G.J., who cannot appear without counsel.  Otherwise, the remainder of plaintiffs' complaint should be dismissed without prejudice against the named defendants.  Although dubious, the court

---

[6] After filing their original complaint, the plaintiffs filed various documents, namely police reports, which they have requested be considered as exhibits to their complaint. The Clerk of the court is directed to attach these separate filings (Dkt. Nos. 11, 12, 13) to the complaint (Dkt. No. 1) as exhibits. The Clerk of the court is further directed to strike from the docket the letter purportedly written by I.M., a minor child, which was filed with the court on April 26, 2023.  (Dkt. No. 14).  Only the parties or their representative counsel may submit filings on their behalf.

[7] As discussed above, to the extent plaintiff's claims challenge the results of custody proceedings in family court, the domestic relations abstention doctrine may bar those claims, so long as there was no obstacle to the full and fair determination of the custody issue in the state court.

cannot conclude as a matter of law that plaintiffs could not sufficiently amend their complaint to plausibly state a claim against Herkimer County and/or Lisa Burdock.

PLAINTIFFS ARE ADVISED THAT THEY SHOULD NOT SEEK TO FILE A MOTION TO AMEND THEIR COMPLAINT UNTIL DISTRICT JUDGE McAVOY RULES ON THIS COURT'S RECOMMENDATIONS WITH RESPECT TO PLAINTIFFS' ORIGINAL CLAIMS.  ANY MOTION TO AMEND FILED BEFORE JUDGE McAVOY'S DECISION WITH RESPECT TO THIS COURT'S RECOMMENDATIONS WILL BE STRICKEN AS PREMATURE AND WILL NOT BE CONSIDERED BY THE COURT.  As noted below, however, the plaintiffs may file objections to this court's recommendations.

**WHEREFORE,** based on the findings above, it is

**ORDERED,** that plaintiffs' IFP Applications (Dkt. Nos. 16, 17) are **GRANTED,**[8] and it is further

**RECOMMENDED,** that plaintiffs' Fourteenth Amendment due process claims proceed as against defendants Michelle Coddington and Ashley DiFlillippo, and it is further

---

[8] Although their IFP Application has been granted, plaintiffs will still be required to pay fees that they may incur in this action, including copying and/or witness fees.

**RECOMMENDED,** that plaintiffs' claims for injunctive and/or declaratory relief be **DISMISSED WITHOUT PREJUDICE, BUT WITHOUT LEAVE TO AMEND**, and it is further

**RECOMMENDED,** that plaintiffs' Fourth Amendment claims be **DISMISSED WITH PREJUDICE,** and it is

**RECOMMENDED**, that the remainder of the complaint be **DISMISSED WITHOUT PREJUDICE,** and it is further

**RECOMMENDED**, that if the District Court approves this recommendation, the court afford plaintiffs forty-five (45) days from the date of its order within which to file a proposed amended complaint for the court's review or ask for a reasonable extension of time to do so, and it is

**RECOMMENDED**, that if plaintiffs fail to file a proposed amended complaint by the assigned date or by any date extended by the court, the case be returned to me to prepare service orders on the remaining defendants, and it is

**RECOMMENDED**, that if plaintiffs file[9] a proposed amended complaint within the applicable deadline, the court send it back to me for my review, and it is

**ORDERED**, that the Clerk serve a copy of this Order on the pro se plaintiffs.

---

[9] If the court approves this recommendation and allows plaintiffs to submit a proposed amended complaint, plaintiffs should be warned that any amended complaint must be a complete and separate pleading. Plaintiffs must state all of their claims in the new pleading and may not incorporate by reference any part of their original complaint. Plaintiffs are reminded that claims which the district court dismisses with prejudice should not be raised in any subsequently amended complaint.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 2, 2023

Andrew T. Baxter
U.S. Magistrate Judge

28