**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

WENDY S. MULQUEEEN and BRIAN G. MULQUEEN,

                                    Plaintiffs,                    6:22-cv-01301 (BKS/MJK)

v.

MICHELLE CODDINGTON, ASHLEY DIFLILLIPPO[1],
OFFICER JORDAN MADIA, and HERKIMER
COUNTY,

                                    Defendants.

---

**Appearances:**

*Plaintiffs pro se:*
Wendy S. Mulqueen
Brian G. Mulqueen
Dolgeville, NY 13329

*For Defendants Michelle Coddington, Ashley DiFillippo and Herkimer County:*
Stephen M. Groudine
Murphy Burns Groudine LLP
407 Albany Shaker Road
Loudonville, NY 12211

*For Defendant Officer Jordan Madia:*
Gregg Tyler Johnson
Johnson & Laws, LLC
646 Plank Road, Suite 205
Clifton Park, NY 12065

---

[1] The record does not reflect a consistent spelling of this Defendant's name. (*See, e.g.,* Dkt. Nos. 76, at 1-2 (using "DiFilippo" and "DiFlillippo"); 85, at 1 (using both "DiFillipo" and "DiFillippo"). The Court uses the spelling Ashley DiFillippo from Defendants' memoranda and official records on the docket. (*See, e.g.*, Dkt. Nos. 35, 85). The Clerk is requested to change the name on the docket to the corrected spelling.

1

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiffs pro se Wendy and Brian Mulqueen bring this action under 42 U.S.C. § 1983 against Defendants Michelle Coddington, Ashley DiFillippo, Officer Jordan Madia, and Herkimer County.[2] Plaintiffs Third/Final Amended Complaint ("TAC") alleges that Defendants violated Plaintiffs' Fourteenth Amendment due process rights in connection with the alleged removal of their daughter. (Dkt. No. 76, at 1).[3] Plaintiffs seek compensatory and punitive damages. (*Id.* at 31-32). Plaintiffs also seek "an order in the interest of justice to reopen the alleged child abuse case and dismiss the case requiring the removal of Plaintiffs from the child abuse registry[.]" (*Id.* at 32). Presently before the Court is Defendants Michelle Coddington, Ashley DiFillippo, and Herkimer County's (collectively, the "Herkimer County Defendants") motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 85). The motion is fully briefed. (Dkt. Nos. 85-3, 89, 95).[4] Also before the Court is Defendant Madia's motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6). (Dkt. No. 87). That motion is also fully briefed. (Dkt. Nos. 87-1, 98, 107). Finally, Plaintiffs have filed a motion to seal certain documents submitted in support of their memorandum in opposition to the Herkimer County

---

[2] Plaintiffs also name "Lisa Burdock" as a defendant. (Dkt. No. 76, at 1-2). However, United States Magistrate Judge Katz previously denied Plaintiffs' motion to amend their complaint to add Lisa Burdick as a party-defendant with prejudice. (Dkt. No. 79, at 11). Magistrate Judge Katz noted that Plaintiffs failed to "rectify the deficiencies" previously articulated by the Court, i.e. there are "no allegations describing conduct by Ms. Burdick giving rise to plaintiffs' alleged constitutional injuries." (*Id.* at 10). The Court agrees that the Third Amended Complaint alleging that Defendants acted under the supervision of Lisa Burdock/Burdick and that she "ignore[ed] [P]laintiffs' valid concerns[,]" (*see* Dkt. No. 76, at 2, 31), fails to state a claim against her, *see Buari v. City of New York*, 530 F. Supp. 3d 356, 391 (S.D.N.Y. 2021) (collecting cases) ("[T]here is no constitutional right to an adequate investigation, and therefore a claim for failure to investigate is not independently cognizable under Section 1983[.]")

[3] Several of the numbered paragraphs in the TAC span many pages. The Court instead cites to the TAC by reference to the page numbers generated by the Court's CM/ECF system.

[4] The Court notes that the Herkimer County Defendants have not addressed Plaintiffs' *Monell* claim, which Magistrate Judge Katz found was "plausibly allege[d]" (Dkt. No. 79, at 14). The Court therefore does not address it at this time.

Defendants' motions to dismiss. (Dkt. No. 90). For the reasons that follow, the Herkimer County Defendants' motion to dismiss is denied, Defendant Madia's motion to dismiss is granted, and Plaintiffs' motion to seal is granted in part and denied in part.

## II.    FACTS[5]

This case arises from a Herkimer County Child Protective Services ("HCCPS") investigation regarding child abuse claims against Plaintiffs. Wendy and Brian Mulqueen are the mother and father of their daughter I.M., who was sixteen years old at the time of the investigation. (Dkt. Nos. 76, at 1-2; 76-1, at 5). Plaintiffs are also grandparents to I.M.'s child, G.J. (Dkt. Nos. 76, at 1; 76-3, at 67).[6]

On June 16, 2022, Wendy Mulqueen and I.M. were "involved in a minor altercation" that was a "one-time, isolated event that did not cause significant harm[,] and arose from a challenging situation initiated by I.M." (Dkt. No. 76, at 3). On June 17, 2022, "CPS worker Michelle Coddington visited the Mulqueen residence to investigate[.]" (Dkt. No. 76-3, at 67). On June 18, 2022, "Defendants, under the direction of CPS workers [Coddington] and [DiFillippo], along with Officer Jordan Madia, issued a 15-minute ultimatum, effectively coercing Plaintiffs to find alternative placement for I.M or [she] would be placed in a respite program." (Dkt. No. 76, at 3). "No court order or warrant had been obtained prior to the removal, and there were no exigent circumstances that justified this immediate action." (*Id.* at 5). The

---

[5] The facts are drawn from the TAC and the attached exhibits, paying special attention to Plaintiffs' "Timeline of Events Involving Herkimer County CPS, Law Enforcement, and PINS Department[.]" (Dkt. No. 76-3, at 66). The Court has only included facts relevant to the pending motion. The Court notes that Plaintiffs' exhibit numbers are not consecutive and do not align with the docket numbers assigned by the CM/ECF system, which is an issue that Magistrate Judge Katz previously pointed out to Plaintiffs. (*See* Dkt. No. 79, at 5). The poor organization makes it difficult for the Court to navigate Plaintiffs' filings. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of N.Y.*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true the legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] It is unclear from the record whether Plaintiffs ever had custody of G.J. (*See* Dkt. No. 76-1, at 15 (reporting that Wendy Mulqueen told an officer on August 24, 2022 that "she didn't yet" have custody of G.J., "but was in the middle of court stuff to try and gain custody rights")).

alleged removal "was based solely on alleged concerns that I.M. had expressed [a] desire to leave home and move in with her adult boyfriend despite being a minor at the time." (*Id.*).

Defendants subsequently "refused to facilitate I.M.'s return" to Plaintiffs' home. (*Id.* at 5). On June 20, 2022, Brian Mulqueen contacted the police to tell them that "I.M. and G.J. had not returned" and that he believed I.M. was in Schenectady, N.Y. (Dkt. No. 76-3, at 71). Officer "C" told Brian Mulqueen that "he would need to contact the police department where I.M. and G.J. went." (*Id.*). Wendy Mulqueen contacted Michelle Coddington three times, with no response. (*Id.*). She also contacted Ashley DiFillippo, with no response (*Id.*). Michelle Coddington "obstructed Plaintiffs' efforts to secure I.M.'s return by interfering with police reports and failing to assist when I.M. left the alternative placement arranged under Defendants' direction." (Dkt. No. 76, at 5). Plaintiffs have submitted a copy of a petition, which appears to have been filed in Schenectady County Family Court on July 20, 2022, indicating that a third person, whom Plaintiffs identify as "D.H.," sought sole legal custody of I.M. (Dkt. No. 89, Exh. 10, at 20).

On June 21, 2022, "Brian Mulqueen contacted the Schenectady Police Department to inform them about the runaway situation." (Dkt. No. 76-3, at 71). "Schenectady County Police informed Wendy and Brian Mulqueen that I.M. must be reported in Dolgeville, NY[.]" (*Id.*). Brian Mulqueen called Officer "C" back, who "informed [them] that after speaking with Michelle Coddington[,] a missing person's/runaway report could not be filed." (*Id.*). Plaintiffs allege that, "[o]n or around June 21, 2022," Coddington "placed I.M. into the residence of D.H." (Dkt. No. 76, at 6). Plaintiffs characterize this placement as "[a] secondary illegal seizure of I.M." "without immediate or imminent danger present, no exigent circumstances, and no court

order or warrant." (*Id.*). Plaintiffs allege that "Defendants' actions on June 18 and June 21, 2022 resulted in a de facto removal of I.M." (*Id.* at 5).

On August 5, 2022, the Mulqueens learned that I.M. was in Schenectady, NY "through custody paperwork[,]" and that another adult was "providing shelter" to I.M. (Dkt. No. 76-3, at 72). "Rotterdam police informed Brian Mulqueen that emergency temporary custody paper[work] was presented[.]" (*Id.*). Later that day, Herkimer County CPS called Brian Mulqueen and "stated they had deemed D.H. responsible for I.M." (*Id.*).

On August 8, 2022, the Mulqueens met with Michelle Coddington who informed them "that a CPS worker from Schenectady County Social Services had visited the residence of D.H. and deemed it safe." (*Id.*). The Mulqueens "explained they did not approve of where I.M. was[,]" and showed Coddington pictures and videos "regarding I.M.'s behavior[.]" (*Id.*). Schenectady County Family Court records indicate that the Mulqueens filed a custody petition on August 8, 2022, seeking custody of I.M. (Dkt. No. 89, Exh. 10, at 8).

Plaintiffs allege that Coddington submitted "falsified documentation" in reports to the Family Court and to a New York State Child Abuse Registry Appeals Hearing. (Dkt. No. 76, at 7). Plaintiffs assert that "[t]hese falsified reports portrayed an inaccurate and misleading account of the events and circumstances surrounding the removal, which harmed [P]laintiffs' ability to contest the removal in court and led to [P]laintiffs' wrongful placement on the New York State Child Abuse Registry." (*Id.*). The Herkimer County Defendants have submitted a copy of a January 23, 2024 decision from the State of New York Office of Children and Family Services, by Administrative Law Judge Ivan Perez (the "OCFS Decision"). (Dkt. No. 85-2).[7] In this

---

[7] At the request of the Herkimer County Defendants, (Dkt. No. 85-3, at 6), the Court takes judicial notice of the fact of the OCFS decision, but does not accept the truth of its findings for the purpose of this ruling. The Court may take judicial notice of a decision "though [the] factual findings may not be taken as true for purposes of the motion to dismiss." *Zynger v. Dep't of Homeland Sec.,* 615 F. Supp. 2d 50, 61 (E.D.N.Y. 2009) (citations omitted).

decision Judge Perez denied the request by Wendy Mulqueen to "amend the report(s)" maintained by the New York State Central Register of Child Abuse and Maltreatment indicating her "for abuse and/or maltreatment." (Dkt. No. 85-2, at 3, 10). Judge Perez found that Wendy Mulqueen "ha[d] been shown by a fair preponderance of the evidence to have committed maltreatment." (*Id.* at 10).

## III.    MOTIONS TO DISMISS

### A.  Standard of Review

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Mann v. N.Y. State Ct. of Appeals*, No. 21-cv-49, 2021 WL 5040236, at *3, 2021 U.S. Dist. LEXIS 209018, at *8 (N.D.N.Y. Oct. 29, 2021) (citation omitted). A motion to dismiss based on an abstention doctrine is considered a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), *City of New York v. Milhelm Attea & Bros.*, Inc., 550 F. Supp. 2d 332, 341 (E.D.N.Y. 2008), as is a motion to dismiss under the *Rooker-Feldman* doctrine, *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 273 (S.D.N.Y. 2018). A district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true[] and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). The Court may also "refer to evidence outside the pleadings" and "take judicial notice of documents in the public record, including state court filings." *Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc.*, No. 20-cv-1140, 2021 WL 2142924, at *2, 2021 U.S. Dist. LEXIS 99456, at *5 (N.D.N.Y. May 26, 2021) (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face,'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The complaint of a plaintiff proceeding pro se "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

### B.  Analysis

### 1.  Subject Matter Jurisdiction

The Herkimer County Defendants seek dismissal under 12(b)(1) for lack of subject matter jurisdiction under two doctrines: the *Rooker-Feldman* Doctrine and domestic relations abstention. (Dkt. No. 85-3, at 8).[8] Plaintiffs oppose dismissal. (Dkt. No. 89). The Court considers each doctrine in turn.

---

[8] Officer Madia also seeks dismissal under rule 12(b)(1), (*see* Dkt. No. 87), but does not argue the point in his memorandum of law, (*see* Dkt. No. 87-1). Nevertheless, Officer Madia "joins and incorporates by reference the evidence and arguments advanced by the [Herkimer] County Defendants and asks this Court to dismiss the Complaint against [him] for the same reasons[.]" (*Id.* at 6).

a. **Rooker-Feldman Doctrine**

The *Rooker-Feldman* doctrine bars federal claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)); *see also Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). There are four "requirements" that must be satisfied before *Rooker-Feldman* applies: (1) the "federal-court plaintiff must have lost in state court," (2) the plaintiff "must complain of injuries caused by a state-court judgment," (3) the plaintiff "must invite district court review and rejection of that judgment," and (4) the state-court judgment "must have been rendered before the district court proceedings commenced." *Green*, 585 F.3d at 101 (citing *Hoblock*, 422 F.3d at 85) (internal quotation marks and brackets omitted). The underlying principle of the *Rooker-Feldman* doctrine is that "within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock*, 422 F.3d at 85. Where allegations of fraud invite "the federal court to review the state proceedings and determine that the . . . judgment was issued in error," a claim is barred to the extent that the relief sought "voids" the state judgment. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014).

But a claim seeking damages for injuries that "does not require the federal court to sit in review of the state court judgment" is not barred by the *Rooker-Feldman* doctrine. *See id.* at 427–28. In a child custody context, a plaintiff's "constitutional claims based *solely* on whether sufficiently exigent circumstances existed to justify an *emergency* removal are not barred by the *Rooker–Feldman* doctrine." *Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 544 (E.D.N.Y. 2013), *aff'd*, 560 F. App'x 6 (2d Cir. 2014). *See also Johnson v. New York State Off. of Child & Fam.*

*Servs.*, No. 16-cv-1331, 2017 WL 6459516, at *3-4, 2017 U.S. Dist. LEXIS 206976, at *7-12

(N.D.N.Y. Dec. 18, 2017) (holding *Rooker-Feldman* did not deprive federal district court of

jurisdiction of the plaintiff's action where plaintiff did not challenge a family court order, and

because family court orders did not cause plaintiff's injuries).

Moreover, "[w]hile the *Rooker–Feldman* doctrine recognizes that the federal district

courts may not review decisions by a state's courts, it does not preclude federal district court

review of 'executive action, including determinations made by a state administrative agency.'"

*Mitchell v. Fishbein*, 377 F.3d 157, 165 (2d Cir. 2004) (quoting *Verizon Maryland Inc. v. Public

Service Commission*, 535 U.S. 635, 644 n.3 (2002)). "This principle holds true even where the

administrative agency acted in an adjudicative capacity[,] or where the plaintiff could have

sought, but did not seek, review of the agency's determination in a state court." *Id.* (citations

omitted). *See also Heller v. Bedford Cent. Sch. Dist.*, 144 F. Supp. 3d 596, 614 (S.D.N.Y. 2015),

aff'd, 665 F. App'x 49 (2d Cir. 2016) ("*Rooker-Feldman* does not deprive a federal court of

jurisdiction merely because the plaintiff seeks a legal conclusion different from that reached by

the state court; as discussed below, such a situation instead raises potential application of claim

and/or issue preclusion." (citing *Exxon Mobil Corp.*, 544 U.S. at 293)).

Here, Defendants argue that "[t]he existence of family court and administrative decisions

that deal with issues at the heart of this lawsuit run counter to" the *Rooker-Feldman* doctrine.

(Dkt. No. 85-3, at 8). Defendants cite to United States Magistrate Judge Baxter's Report and

Recommendation dismissing, in part, [P]laintiffs' initial Complaint on August 2, 2023. (*Id.*

(citing Dkt. No. 18, at 6-12). But in that Report and Recommendation, which this Court adopted,

(*see* Dkt. No. 21), Magistrate Judge Baxter noted that Plaintiffs' claims for monetary damages

were not barred under *Rooker-Feldman*, (Dkt. No. 18, at 11-12).

To the extent that Plaintiffs seek damages for the wrongful removal of I.M., Plaintiffs do not complain of an injury caused by a state court judgment; indeed, they allege that no court ever adjudicated I.M.'s alleged removal. (*See* Dkt. No. 76, at 5 (alleging no court order or warrant was obtained prior to the removal), 6 (alleging no post-removal hearing "at any time")). Defendants themselves argue that Herkimer County was not a party to any action that interrupted Plaintiffs' custody of I.M. (*See* Dkt. No. 85-3, at 7). As such, there is no state court judgment to review on the issue of the Herkimer County's removal of I.M. from Plaintiffs' custody. As Magistrate Judge Baxter previously concluded, the *Rooker-Feldman* doctrine does not apply to Plaintiffs' claims "seeking compensation for injuries [P]laintiffs allege they sustained due to unconstitutional actions taken by [D]efendants during the removal of their child[.]" (Dkt. No. 18, at 11).

As to Plaintiffs' requested injunctive relief, it is not clear to the Court what "child abuse case" Plaintiffs wish to "reopen[,]" "and dismiss," thereby "requiring the removal of Plaintiffs from the child abuse registry." (Dkt. No. 76, at 32). It is not clear from the record whether Plaintiffs were the subject of a neglect proceeding in Family Court related to I.M. (*See* Dkt. Nos. 76-3, at 79-80 (indicating that Schenectady County Family Court granted leave to commence child protective proceeding); Dkt. No. 89, at 68 (asserting that "the New York Family Court dismissed the underlying matter")). To the extent that Plaintiffs challenge a Family Court adjudication of neglect, or Defendants' conduct therein, such challenge would likely be precluded by *Rooker-Feldman*. *See Voltaire v. Westchester Cnty. Dep't of Soc. Servs.*, No. 11-cv-8876, 2016 WL 4540837, at *10, 2016 U.S. Dist. LEXIS 116409, at *30-31 (S.D.N.Y. Aug. 29, 2016) ("*Rooker-Feldman* bars both [the p]laintiff's request to vacate the [family court] termination order as well as any due process claims related to [the d]efendant's conduct during or

after the termination proceeding[.]" (collecting cases)); *see also Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 105-06 (N.D.N.Y. 2011) (holding that *Rooker-Feldman* barred due process claims where plaintiff alleged her rights were violated when a counselor submitted "false evidence, contradicting statements, and perjured declarations" during state court proceedings, because "complaint invite[d] review, and essentially rejection of, the state court judgments"). At this point, without further briefing, Defendants' motion to dismiss based upon *Rooker-Feldman* is denied.

### b. Domestic Relations Abstention

"The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." *Deem v. DiMella-Deem*, 941 F.3d 618, 624 (2d Cir. 2019) (quoting *In re Burrus*, 136 U.S. 586, 593–94 (1890)). "When a case calls for a federal court to interpret state domestic relations law or 'immerse itself in domestic relations matters,' the court must abstain from proceeding with the case due to the state courts' 'greater interest and expertise' in that field." *Evans v. Adams*, 714 F. Supp. 3d 119, 124 (E.D.N.Y. 2024) (quoting *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990)). "Federal courts do have jurisdiction to decide tort, contract or civil rights questions in cases arising out of a domestic relations context when the underlying domestic relations issues are not in dispute." *McArthur v. Bell*, 788 F. Supp. 706, 708 (E.D.N.Y. 1992). Courts are not required to abstain where the primary issue is not "the state's adjudication of the domestic dispute." *See Cegalis v. Trauma Inst.*, No. 19-cv-00153, 2021 WL 825405, at *4, 2021 U.S. Dist. LEXIS 42096, at *13-14 (D. Vt. Mar. 4, 2021)

Defendants cite to Magistrate Judge Baxter's Report and Recommendation, but do not explain how the domestic relation abstention doctrine applies to the specific relief requested in

the TAC. (*See* Dkt. No. 85-3, at 8). As noted above, and as this Court previously held, (*see* Dkt. No. 18, at 11-12), Plaintiffs' claims for monetary damages stemming from the alleged wrongful removal of I.M. are cognizable in federal court, *see Cegalis*, 2021 WL 825405, at *4, 2021 U.S. Dist. LEXIS 42096, at *13-14 (D. Vt. Mar. 4, 2021) (declining to abstain under domestic relations doctrine where the plaintiff's abuse of process claim did not seek to change the results of child custody proceedings).

As to Plaintiffs' request for injunctive relief, Defendants argue that this issue "was already decided by ALJ Perez [and] is clearly not justiciable in this Court."(Dkt. No. 85-3, at 8). Again, it is not clear from the TAC what "child abuse case" Plaintiffs wish to "reopen" and "dismiss[.]" (*See* Dkt. No. 76, at 32). As noted above, the *Rooker-Feldman* doctrine would prevent this Court from reviewing a prior Family Court adjudication of neglect. *See* discussion *supra* Section III.B.1.a. To the extent Plaintiffs are challenging the case decided by the New York State Office of Children of Family Services, their claim appears to be based on allegedly false reports Coddington submitted at the hearing. (Dkt. No. 76, at 7). While the Court is not aware of any basis for reopening and dismissing any such proceeding, absent further briefing, the Court declines to dismiss based on the domestic relations exception at this time.

### 2. Res Judicata

Defendants argue that Plaintiffs' claims are barred by res judicata, because the OCFS Decision "demonstrates that a fair and full opportunity to litigate the issue of the abuse/maltreatment of I.M. was provided to the Plaintiffs, and they lost." (Dkt. No. 85-3, at 8-9). Plaintiffs disagree, arguing that res judicata does not apply because "the New York Family Court dismissed the underlying matter, and the New York State Central Register [ ] Administrative Appeals hearing is not a judicial proceeding." (Dkt. No. 89, at 68).

"[T]he judgments of state agencies do not necessarily have the same preclusive effect as the judgments of state courts." *Alfredo's Foreign Cars, Inc. v. Stellantis US LLC*, No. 22-cv-10478, 2024 WL 964967, at *3, 2024 U.S. Dist. LEXIS 38249, at *8 (S.D.N.Y. Mar. 5, 2024). "State proceedings are typically given preclusive effect in federal courts by way of 28 U.S.C. § 1738, which provides that 'judicial proceedings' of a state 'shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such [s]tate.'" *Id.* (quoting *K.C. v. Chappaqua Cent. Sch. Dist.*, No. 16-cv-3138, 2017 WL 2417019, at *6, 2017 U.S. Dist. LEXIS 84858, at *21 (S.D.N.Y. June 2, 2017)). Administrative adjudications, however, are not "'state-court judgments within the coverage of [§] 1738.'" *Id.* (quoting *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 310 (2d Cir. 2005)). "Instead, '[a]bsent specific statutory guidance from Congress, the preclusive effect of prior unreviewed state administrative decisions upon a subsequent suit in federal court is a matter of federal common law.'" *Id.* (quoting *Leventhal v. Knapek*, 266 F.3d 64, 72–73 (2d Cir. 2001)).

Defendants also argue that "state administrative fact findings are entitled to preclusive effect in a subsequent § 1983 action 'when a state agency is acting in a judicial capacity . . . [and] resolves disputed issues of fact properly before it which the parties have had an opportunity to litigate.'" (Dkt. No. 95, at 7 (quoting *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986))). *Elliot* "'speaks only in terms of issue preclusion.'" *Alfredo's*, 2024 WL 964967, at *3, 2024 U.S. Dist. LEXIS 38249, at *9 (S.D.N.Y. Mar. 5, 2024) (citing *Wiercinski v. Mangia 57, Inc.*, No. 09-cv-4413, 2010 WL 2681168, at *4, 2010 U.S. Dist. LEXIS 66498, at *14 (E.D.N.Y. July 2, 2010)). However, "[n]either the Supreme Court nor [the Second Circuit] has decided whether preclusion would similarly apply in a suit under 42 U.S.C. § 1983 for an

issue of law or a mixed question of law and fact resolved by the state agency[.]" *Leventhal*, 266 F.3d at 72 n.3. "Nor has either court addressed how *claim* preclusion applies to similar judgments." *Alfredo's*, 2024 WL 964967, at *3, 2024 U.S. Dist. LEXIS 38249, at *9 (citation omitted). That inquiry is not straightforward. *See, e.g., Alfredo's*, 2024 WL 964967, at *4-5, 2024 U.S. Dist. LEXIS 38249, at *14-16 (considering "whether claim preclusion[,]" in the context of a DMV Proceeding, "would be consistent with the traditional principles of res judicata and with the policies underlying the Full Faith and Credit Clause" before holding that "federal common law does not accord preclusive effect to the DMV Proceeding" (internal citations and quotations omitted)).

Here, Defendants do not address how the ALJ's determination of maltreatment could be res judicata with respect to the Plaintiffs' constitutional claims, and Defendants have not briefed the applicability of issue preclusion. Defendants appear to base their claim of res judicata on Plaintiffs' request for injunctive relief which, as noted above, is unclear and likely unsupported. (Dkt. No. 85-3, at 8-9). In any event, the issues concerning any res judicata or collateral estoppel effect of the ALJ's decision are not sufficiently briefed for the Court to make a ruling at this time. Defendants' motion to dismiss based on res judicata is therefore denied and the Court will not apply issue preclusion to facts found by the ALJ.

### 3. Fourteenth Amendment Claims

The Herkimer County Defendants seek dismissal of Plaintiffs' Fourteenth Amendment claims, arguing that the Plaintiffs' "own submissions in support of their [TAC], including the Family Court filings, establish that [(1)] I.M. was never removed or seized, [(2)] I.M. was never taken into the custody of Herkimer County, [(3)] I.M. was never placed by Herkimer County, and [(4)] the dispute surrounding I.M.'s custody was previously litigated in Schenectady County

Family Court." (Dkt. No. 85-3, at 7). Defendants argue that, because I.M. "was never removed or

seized," the TAC "does not state a procedural or substantive due process violation under the

Fourteenth Amendment[.]" (*Id.* at 7-8). Alternatively, Defendants argue that "even assuming

arguendo that I.M. had been removed from [P]laintiffs' care," the administrative hearing and

subsequent OCFS Decision bar Plaintiffs' substantive due process claims. (See Dkt. No. 85-3, at

8-10). Plaintiffs oppose dismissal, arguing that HCCPS "forced [them] to make a placement

decision under duress within 15 minutes, threatening immediate removal if they did not

comply[.]" (Dkt. No. 89, at 77).[9] Plaintiffs assert that "this ultimatum and subsequent facilitation

of placement constituted a de facto removal, despite the absence of a court order, warrant, or

exigent circumstances." (Dkt. No. 76, at 3). The Court considers Plaintiffs' substantive and

procedural due process claims in turn.

### a.  Substantive Due Process Claims

Plaintiffs allege separate claims for violations of their substantive due process rights and

their right to familial association, but the latter collapses into the former; "[t]he Fourteenth

Amendment guarantees a substantive right under the Due Process Clause to intimate familial

association[.] *Gorman v. Rensselaer Cnty.*, 910 F.3d 40, 47 (2d Cir. 2018). (*See also* Dkt. No.

18, at 20-21 ("Where the intimate association right at issue is tied to familial relationships and is

independent of First Amendment retaliation concerns . . . the Second Circuit has employed an

analysis under the framework of the Fourteenth Amendment right to substantive due process."

(quoting *Garten v. Hochman*, No. 08-cv-9425, 2010 WL 2465479, at *4, 2010 U.S. Dist. LEXIS

59699, at *11 (S.D.N.Y. June 16, 2010))). The substantive due process right to familial

---

[9] The Court notes that Plaintiffs' memorandum in opposition to Defendants' motion to dismiss purports to quote out-of-circuit caselaw "on coercion in child welfare cases[.]" (Dkt. No. 89, at 74). However, the cited cases do not contain the quoted text. (*Id.* (incorrectly citing *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000); *Franz v Lytle*, 997 F.2d 784 (10th Cir. 1993)).

association "safeguard[s] persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012) (quotation marks and citation omitted).

"[W]hile a procedural due process claim challenges the procedure by which a removal is effected, a substantive due process claim challenges the 'fact of [the] removal itself.'" *Southerland*, 680 F.3d at 142 (quoting *Bruker v. City of N.Y.,* 92 F.Supp.2d 257, 266–67 (S.D.N.Y.2000)). "To state a claim for a violation of substantive due process, a plaintiff must allege (1) a valid liberty or property interest and (2) that defendants infringed on that interest in an arbitrary or irrational manner." *Sandoval v. Abbott House*, No. 24-cv-502, 2025 WL 1413640, at *2, 2025 U.S. Dist. LEXIS 93228, at *6 (S.D.N.Y. May 15, 2025) (quoting *20 Dogwood LLC v. Vill. of Roslyn Harbor*, 2024 WL 1597642, at *1, 2024 U.S. App. LEXIS 8832, at *2 (2d Cir. Apr. 12, 2024)). As to the first element, "[f]amily members have, in general terms, a substantive right under the Due Process Clause to remain together without the coercive interference of the awesome power of the state." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir. 2011) (quoting *Anthony v. City of New York*, 339 F.3d 129, 142 (2d Cir.2003).

But while parents "enjoy a constitutionally protected interest in their family integrity, this interest is counterbalanced by the 'compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves.'" *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 104 (2d Cir. 1999) (quoting *Manzano v. South Dakota Dep't of Social Servs.*, 60 F.3d 505, 510 (8th Cir. 1995)). The government's interest, "though compelling, is not so compelling as to derogate a parent's constitutional rights completely. Case workers cannot be free to substantiate a claim of abuse, for instance, by ignoring overwhelming exculpatory information or by manufacturing false

evidence." *Id*. "[S]hort of these obvious extremes . . . [a]n investigation passes constitutional

muster provided simply that case workers have a 'reasonable basis' for their findings of abuse."

*Id*.; *see also Cox*, 654 F.3d at 275 ("Only the most egregious official conduct can be said to be

arbitrary in the constitutional sense and therefore unconstitutional." (quoting *Tenenbaum v.*

*Williams*, 193 F.3d 581, 600 (2d Cir. 1999))).

 To state a claim for a violation of substantive due process in this context, a plaintiff must

demonstrate that the deprivation was "so shocking, arbitrary, and egregious that the Due Process

Clause would not countenance it even were it accompanied by full procedural protection."

*Tenenbaum*, 193 F.3d at 600; *see also McNeil v. HCDSS*, No. 18-cv-0631, 2018 WL 6173983, at

*6, 2018 U.S. Dist. LEXIS 140881, at *14 (N.D.N.Y. Aug. 17, 2018), *report and*

*recommendation adopted sub nom. McNeil v. Riente*, No. 18-cv-0631, 2018 WL 4895848, 2018

U.S. Dist. LEXIS 173174 (N.D.N.Y. Oct. 9, 2018). "Only the most egregious official conduct

can be said to be arbitrary in the constitutional sense and therefore unconstitutional."

*Tenenbaum*, 193 F.3d at 600 (quotation marks omitted). *See also Kenific v. Oswego Cty.*, No. 07-

cv-0213, 2010 WL 2977267, at *13, 2010 U.S. Dist. LEXIS 74252, at *45 (N.D.N.Y. July 23,

2010) (noting the "conscious-shocking requirement" means that, "when they acted, defendants

possessed a state of mind more blameworthy than carelessness or negligence").

 The Herkimer County Defendants argue that Plaintiffs do not state a substantive due

process claim because I.M. was never "removed or seized." (Dkt. No. 85-3, at 7). Plaintiffs

disagree, arguing that they were given "no meaningful choice and were pressured into

compliance." (Dkt. No. 89, at 77). Specifically, Plaintiffs allege that "Defendants, under the

direction of" Coddington and DiFilippo, "along with Officer Jordan Madia issued a 15-minute

ultimatum, effectively coercing Plaintiffs to find alternative placement for I.M. or [she] would be

placed in a respite program." (Dkt. No. 76, at 3). Plaintiffs also allege that there was a "secondary illegal seizure" on June 21, 2022, when Coddington "placed I.M. into the residence of D.H." (*Id.* at 6). Defendants assert that "[n]o one from Herkimer County was physically present when [P]laintiffs and I.M. decided to have her stay somewhere else" on June 18, 2022. (*See* Dkt. No. 85-3, at 6 (citing Dkt. Nos. 76-1, at 5; 76-3, at 84)). But a police report that Plaintiffs attached to the TAC indicates that DiFillippo was on the phone with the police, spoke with Coddington, and talked to both Wendy Mulqueen and I.M. before issuing what Plaintiffs characterize as the 15-minute ultimatum. (Dkt. Nos. 76-1, at 5; 76, at 3). That same report indicates that, on June 21, 2022, Coddington told the police that I.M. was required to stay elsewhere until CPS took further action. (Dkt. No. 76-1, at 5-6).

Defendants also do not address Plaintiffs' allegation that Coddington "orchestrated the secondary illegal seizure of I.M." and placed I.M. with D.H. on June 21, 2022, "without immediate or imminent danger present, no exigent circumstances, and no court order or warrant." (*See* Dkt. No. 76, at 6). According to Plaintiffs' timeline of events, Herkimer County CPS called Brian Mulqueen on August 5th, 2022 and "stated they had deemed D.H. responsible for I.M." (Dkt. No. 76-3, at 72). Plaintiffs also allege that Coddington told them "a CPS worker from Schenectady County Social Services had visited the residence of D.H. and deemed it safe[.]" for I.M. (*Id.*). On these facts, the Court cannot say at this early stage of the litigation, as a matter of law, that Defendants never removed I.M. from Plaintiffs' custody.

Further, almost all of the case law cited by Defendants in support of their argument involves plaintiffs who did not allege that their child was removed from their custody. *See Daniels v. Murphy*, No. 06-cv-5841, 2007 WL 1965303, at *4, 2007 U.S. Dist. LEXIS 47838, at *15 (E.D.N.Y. July 2, 2007) (dismissing substantive due process claim because the plaintiff did

not allege that CPS interrupted parental custody, and "at oral argument, plaintiff asserted that she has *never* lost custody of her son Thomas"); *Booker v. Dep't of Soc. Servs.*, No. 23-cv-04888, 2024 WL 3904822, at * 4, 2024 U.S. Dist. LEXIS 150605, at *9-11 (E.D.N.Y. Aug. 22, 2024) (dismissing substantive due process claim where the plaintiff did not "indicate whether and for how long her children were removed from her custody," and provided "*no* facts related to the timing, circumstances, or length of any removal"); *Oglesby v. Eikszta*, 499 F. App'x 57, 60 (2d Cir. 2012) (affirming dismissal of intimate association claim where the "plaintiffs admit[ed] that they never lost custody of any of their children"); *McNeil v. HCDSS*, No. 18-cv-0631, 2018 WL 6173983, at *5, 2018 U.S. Dist. LEXIS 140881, at *13 (N.D.N.Y. Aug. 17, 2018) (recommending dismissal of the plaintiffs' substantive due process claim where the plaintiffs "state[d] in vague and conclusory fashion that [the d]efendants [ ] "infringed" upon their "fundamental liberty interest in the care, custody and control" of their children "without due processing[,]" and the plaintiffs did not allege that the defendants "interrupted their parental custody in any way whatsoever"), *report and recommendation adopted sub nom. McNeil v. Riente*, No. 18-cv-0631, 2018 WL 4895848, 2018 U.S. Dist. LEXIS 173174 (N.D.N.Y. Oct. 9, 2018). The only exception, *Cox v. Warwick Valley Cent. Sch. Dist.*, relies on very different facts. *See* 654 F.3d 267, 271, 275-76 (2d Cir. 2011) (affirming dismissal of substantive due process claim against school and principal, where principal reported concerns to child welfare worker who insisted parents take child to undergo psychiatric evaluation "and warned that otherwise they could lose custody"; parents maintained custody during child's "entire ([c]oncededly coerced) psychiatric evaluation").

Finally, Defendants argue that "even assuming arguendo that I.M. had been removed from [P]laintiffs' care," the administrative hearing and subsequent OCFS Decision bar Plaintiffs'

substantive due process claim. (See Dkt. No. 85-3, at 8-10). Defendants argue the claim is barred because the OCFS Decision already determined that Wendy Mulqueen abused or mistreated I.M., and that because I.M. was in fact abused or mistreated, "any such removal, as a matter of law, would not be considered 'so shocking, arbitrary, and egregious' as to invoke" the substantive due process clause. (*Id.* at 9-10 (citing *Sanchez v. County of Dutchess*, No. 17-cv-6597, 2024 WL 4289902, at *7-8, 2024 U.S. Dist. LEXIS 175885, at *18-21 (S.D.N.Y. Sep. 25, 2024) (dismissing substantive due process claim where, "[g]iven that Plaintiffs cannot deny that they in fact neglected their children" because the issue had been previously decided in Family Court, it was "entirely implausible that the children's removal, based in part on statements by [the caseworkers] accusing [the p]laintiffs of doing so, was 'so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection'")).

Sanchez, however, involved a neglect case that was previously adjudicated in State Family Court—not an unreviewed administrative decision. *See id.* And while Defendants argue that "state administrative fact findings" such as the OCFS Decision "are entitled to preclusive effect in a subsequent § 1983 action[,]" (Dkt. No. 95, at 7 (quoting *Elliott*, 478 U.S. at 799), the Court has declined to consider the preclusive effect of these findings because the issue has not been adequately addressed. As such, Defendants' motion to dismiss is denied as to Plaintiffs' substantive due process claims.

**b.  Procedural Due Process**

To establish a procedural due process claim, a plaintiff must prove "(1) a 'protected property or liberty interest,' (2) defendants' denial of that interest, and (3) evidence that the denial was effected 'without due process.'" *Schweitzer*, 935 F. Supp. 2d at 545 (citing *Palacio v.*

*Pagan,* 345 F. App'x 668, 669 (2d Cir. 2009)). As noted above, parents and certain custodial family members "have a constitutionally protected liberty interest in the care, custody and management of their children," but "the State has a profound interest in the welfare of the child, particularly his or her being sheltered from abuse." *See Tenenbaum*, 193 F.3d at 593-94. To that end, "the relationship between parent and child may be investigated and terminated by the state provided constitutionally adequate procedures are followed." *McNeil*, 2018 WL 6173983, at *5, 2018 U.S. Dist. LEXIS 140881, at *11 (citing *Santosky*, 455 U.S. at 766).

"As a general rule, . . .  before parents may be deprived of the care, custody or management of their children without their consent, due process—ordinarily a court proceeding resulting in an order permitting removal—must be accorded to them." *Tenenbaum*, 193 F.3d at 593. But, in "'emergency' circumstances,' a child may be taken into custody by a responsible State official without court authorization or parental consent." *Id.* at 594 (internal citations omitted). "Emergency circumstances mean circumstances in which the child is immediately threatened with harm." *Id.* (quoting *Hurlman v. Rice*, 927 F.2d 74, 80 (2d Cir. 1991)). "While 'there is a sufficient emergency to warrant officials' taking [a child into] custody without a prior hearing if [they are] immediately threatened with harm,' the converse is also true. If the danger to the child is not so imminent that there is reasonably sufficient time to seek prior judicial authorization, *ex parte* or otherwise, for the child's removal, then the circumstances are not emergent; there is no reason to excuse the absence of the judiciary's participation in depriving the parents of the care, custody and management of their child." *Id.* (quoting *Robison v. Via*, 821 F.2d 913, 922 (2d Cir. 1987)).

For all the reasons previously discussed, at this point the Court cannot find, as a matter of law, that I.M. was not removed from Plaintiffs' custody. *See* discussion *supra* Section III.B.3.a.

Defendants also repeat their argument that, even assuming I.M. was removed, the administrative hearing and subsequent OCFS Decision bar Plaintiffs' procedural due process claim. (See Dkt. No. 85-3, at 8-10). Here, however, Defendants conflate the case law; to state a *substantive* due process claim, Plaintiffs must demonstrate that the deprivation was "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Tenenbaum*, 193 F.3d at 600(emphasis added). Plaintiffs are not, however, required to make the same showing to state a *procedural* due process claim. *See, e.g., id.* at 595, 601 (holding that "temporary separation of [child] from her parents in an effort to obtain assurance that she had not been abused" was not "so shocking, arbitrary, and egregious" as to "constitute a violation of [plaintiffs'] substantive due-process rights[,]" but that "a properly instructed jury could conclude that at the time the caseworkers decided to remove [the child], there was reasonably sufficient time, entirely consistent with [the child]'s safety, to seek a court order[,]" and "that use of emergency, extra-judicial procedures was an infringement of the [plaintiffs' and child]'s procedural due-process rights"). Therefore, at this preliminary stage, the Court denies Defendants' motion to dismiss as to Plaintiffs' procedural due process claim.

### 4. Officer Madia

Officer Madia moves separately to dismiss all claims as alleged against him. (Dkt. No. 87). Madia, in addition to joining and incorporating by reference the arguments advanced by the County Defendants, argues that Plaintiffs have stated no viable substantive or procedural due process against him. (*Id.* at 6, 10-15). Madia also argues that he is entitled to qualified immunity. (*Id.* at 15-17). Plaintiffs disagree on both counts. (Dkt. No. 98).

### a. Due Process Claims

It is well-settled that a plaintiff alleging a violation of her constitutional rights under Section 1983 must show state action. *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012); *see* 42 U.S.C. § 1983 (imposing liability on persons who act "under color of any [state] statute, ordinance, regulation, custom, or usage"). Madia cites caselaw asserting that an "officers' mere presence at the scene" of certain disputes "does not constitute state action sufficient to trigger [ ] Fourteenth Amendment protection." *See Sullivan v. Stein*, 487 F. Supp. 2d 52, 69 (D. Conn. 2007) (holding, on summary judgment, that municipal defendants did not violate Fourteenth Amendment where it was "clear from the record that all the police did was inform the Sullivans that they would have to proceed through the civil courts in order to establish their claim to the Valley View residence"); *Barrett v. Harwood*, 189 F.3d 297, 303 (2d Cir. 1999) (affirming district court's dismissal of claims against officer at scene of a repossession, on summary judgment, where officer's "actions amounted to no more than the carrying out of his duty to prevent violence in the event of a breach of the peace" and concluding "that there was no state action to facilitate the repossession"). But *Sullivan* and *Barrett* were both decided on summary judgment; at that stage of the litigation, the court in each case was better-positioned to assess the extent of the officers' actions at the scene of the dispute.

Still, the TAC is threadbare with respect to Officer Madia's personal involvement. To state a claim under § 1983, a plaintiff must allege that a defendant was personally involved in and proximately caused the constitutional deprivation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991))); *Rahman v. Fisher*, 607 F.

Supp. 2d 580, 584 (S.D.N.Y. 2009) ("A defendant's conduct must be a proximate cause of the claimed violation in order to find that the defendant deprived the plaintiff of his rights." (quoting *Martinez v. California*, 444 U.S. 277, 285, 100 S. Ct. 553, 62 L. Ed. 2d 481 (1980))).

Plaintiffs allege that Defendants, "along with Officer Jordan Madia, issued a 15-minute ultimatum" coercing them into finding "alternative placement" for I.M. (Dkt. No. 76, at 3). Plaintiffs further allege, in a conclusory manner, that Madia, "following the directive of Coddington and [DiFillippo], enforced the unlawful seizure without any legal justification." (*Id.* at 6). While a police presence at the Plaintiffs' home may have shaped the events of June 18, 2022, their claims lack specificity as to actions taken by Madia that violated Plaintiffs' constitutional rights.[10] In any event, the Court need not rule on the sufficiency of Plaintiffs' constitutional claim against Madia because the Court finds that he has qualified immunity.

### b. Qualified Immunity

Madia argues that he is entitled to qualified immunity as a matter of law. (Dkt. No. 87-1, at 15). Qualified immunity is an affirmative defense on which defendants bear the burden of proof. *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013). "[Q]ualified immunity questions should be resolved at the earliest possible stage of a litigation[.]" *Chayo v. Kaladjian*, 844 F. Supp. 163, 168 (S.D.N.Y. 1994) (quoting *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987). For a qualified immunity defense asserted in a motion to dismiss to be successful, the "facts supporting the defense [must] appear on the face of the complaint," and the plaintiff "is entitled

---

[10] The police report attached to the TAC (and offered by Plaintiffs as an exhibit "documenting the events of June 18, 2022") indicates that Madia only facilitated a series of phone calls, (Dkt. No. 76-1, at 2-5). Plaintiffs also cite to certain investigation notes as evidence of Madia's involvement, but those notes indicate only that Madia told DiFillippo he "fe[lt] it [was] best if I.M. le[ft] for the weekend." (Dkt. No. 76-3, at 98-100). Finally, Plaintiffs have directed the Court's attention to a video that shows Madia and another officer "present outside [Plaintiffs'] home, standing by while I.M. was transferred to an individual from the D.M. residence." (Dkt. No. 104, at 3). But neither Madia nor the other officer take any action in that video. (*Id.*).

to all reasonable inferences from the facts alleged . . . that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 434, 436 (2d Cir. 2004).

Public officials are entitled to qualified immunity on a § 1983 claim "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (internal quotation marks omitted) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018)); *see also generally Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The Supreme Court has 'repeatedly told courts . . . not to define clearly established law at a high level of generality.'" *Jones v. Treubig*, 963 F.3d 214, 227 (2d Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "Instead, '[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established,' and, thus, '[t]his inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

The Court agrees with Madia and finds that he is entitled to qualified immunity as a matter of law because the unlawfulness of Madia's conduct was not clearly established on June 18, 2022. *See Radwan*, 55 F.4th at 113. Plaintiffs' citation to *Duchesne v. Sugarman*, 566 F.2d 817 (2d Cir. 1977), is inapposite. In the circumstances of Officer Madia's alleged conduct: i.e., participating in issuing "a 15-minute ultimatum, effectively coercing [parents] to find alternative placement" for their child, and enforcing that determination, under the direction of, and following the directives of CPS workers, (Dkt. No. 76, at 3, 6), it was not clearly established that his conduct was unlawful. Officer Madia is entitled to qualified immunity because Plaintiffs have not cited, and the Court is not aware of, any precedent that would have led every reasonable officer to conclude that his alleged conduct was unlawful. *C.f. Chayo*, 844 F. Supp. at 170

(dismissing, on summary judgment, claims against police officers who assisted in removal of children; officers were "protected from suit by qualified immunity based on their reasonable reliance on the Caseworkers' assessments"). Therefore, Defendant Madia's motion to dismiss is granted.

## IV.    MOTION TO SEAL DOCUMENTS

Plaintiffs move to seal Exhibits 10, 12, 58, 68, and 69, which they have filed in support of their memorandum in opposition to the Herkimer County Defendants' motion to dismiss. (*See* Dkt. No. 90). Plaintiffs argue that these exhibits "contain highly sensitive and confidential family information," such as "personal identifying information of minor children," "confidential child welfare documents," and "photographs and statements detailing private family matters[.]" (*Id.* at 2). Defendants do not oppose Plaintiffs' motion to seal.

### A.    Standard of Review

Both the common law and the First Amendment protect the right of public access to judicial documents. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006) ("[A] strong presumption of access attaches [to judicial documents], under both the common law and the First Amendment."); *see also Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) (explaining that judicial documents "should not remain under seal absent the most compelling reasons"). "The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." *United States v. Erie Cty., N.Y.*, 763 F.3d 235, 238-39 (2d Cir. 2014). "Indeed, the common law right of public access to judicial documents is said to predate even the Constitution itself." *Id*. at 239. The "Constitution, and specifically the First Amendment to the Constitution, also protects the public's right to have access to judicial documents." *Id*.

26

Under the common law analysis, once the court finds "that the documents are judicial documents and that therefore a common law presumption of access attaches," it "must determine the weight of that presumption":

> The weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.

*Lugosch*, 435 F.3d at 119 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)). Next, the court must balance any "countervailing factors" weighing against the presumption of access. *Id*. at 120. "[T]he crux of the weight-of-the-presumption analysis" requires "balancing the value of public disclosure and countervailing factors such as (i) the danger of impairing law enforcement or judicial efficiency and (ii) the privacy interests of those resisting disclosure." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016) (internal quotation marks omitted). "[T]he privacy interests of third parties [also] carry great weight in the balancing of interests." *Dorsett v. Cty. of Nassau*, 762 F. Supp. 2d 500, 521 (E.D.N.Y.), *aff'd*, 800 F. Supp. 2d 453 (E.D.N.Y. 2011), *aff'd sub nom. Newsday LLC v. Cty. of Nassau*, 730 F.3d 156 (2d Cir. 2013).

The Second Circuit has described the "First Amendment framework" for sealing a judicial document as "more stringent." *Lugosch*, 435 F.3d at 124. Once the court concludes that there is a qualified First Amendment right of access to the judicial documents at issue, it may only seal the documents "if specific, on the record findings are made demonstrating the closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id*. (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). Examples of "higher values" may include law enforcement interests, the privacy of innocent third parties, *Amodeo*, 71 F.3d at

27

1050, and trade secrets, *Ferguson v. Ferrante*, No. 13-CV-4468, 2015 WL 3404140, at *2, 2015 U.S. Dist. LEXIS 68416, at *4 (S.D.N.Y. May 27, 2015). The party seeking to maintain the judicial documents under seal bears the burden of showing that higher values overcome the presumption of public access. *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

"[C]ourt filings in connection with a motion to dismiss are . . . judicial documents, and are generally entitled to a strong presumption of public access." *Desch v. Ulthera, Inc.*, No. 22-cv-02688, 2022 WL 2987084, at *1, 2022 U.S. Dist. LEXIS 134425, at *3 (E.D.N.Y. July 28, 2022) (citation omitted). Whether the court relied on the documents to decide the relevant motion does not affect this determination. *See TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 208-09 (E.D.N.Y. 2024) (finding two documents submitted in connection with defendants' motions to dismiss to be judicial documents entitled to the normal presumption of public access, even though the court did not consider them in deciding the motions); *Shetty v. SG Blocks, Inc.*, No. 20-cv-550, 2020 WL 3183779, at *11, 2020 U.S. Dist. LEXIS 104241, at *30 (E.D.N.Y. June 15, 2020) (stating that even though the "defendants' evidentiary submissions are irrelevant does not mean that they are not judicial documents" and "the fact that [the judge did] not actually rely on defendants' submissions does not weaken the presumption of public access").

B.    **Analysis**

The Court finds that Exhibits 10, 12, 58, 68 and 69 are judicial documents, and both the common law and First Amendment provide a right of access to these exhibits. *See Erie Cty.*, 763 F.3d at 238-39. The Court must therefore consider whether countervailing factors outweigh the presumption of access and whether continued sealing is justified under "the more stringent First Amendment framework." *See Lugosch*, 435 F.3d at 124. "Broad and general findings and

conclusory assertions are insufficient to justify deprivation of public access to the record; specific, on-the-record findings are required." *Bernstein*, 814 F.3d at 144–45 (internal quotation marks and alteration omitted). The Court will consider each exhibit in turn.

### 1.    Exhibit 10

Plaintiffs' Exhibit 10 consists of Family Court documents related to I.M and G.J. These documents contain sensitive, embarrassing, or otherwise inflammatory information that could jeopardize the privacy interests of I.M., G.J., and other third parties. The Court finds that sealing information in these submissions is essential to preserving the aforementioned privacy interests, and in light of the manner in which private information is detailed in the documents that the parties seek to seal, redacting them is not practical. Thus, sealing Exhibit 10 is "essential" to serve a "higher interest." *See LeClair v. Raymond*, No. 19-cv-0028, 2021 WL 2682286, at *25, 2021 U.S. Dist. LEXIS 121870, at *73-74 (N.D.N.Y. June 30, 2021) (granting motion to seal where "the privacy interests of third parties, and in particular [the minor children], would be greatly jeopardized if the sealing and redaction requests were denied"), *aff'd,* No. 22-309-cv, 2023 WL 6632949, 2023 U.S. App. LEXIS 27075 (2d Cir. Oct. 12, 2023); *Winkler v. Grant*, 370 F. App'x 145, 147 (2d Cir. 2010) (vacating district court's denial of motion to seal where lower court "overlooked those instances where the children's names appear in unredacted or otherwise still legible form").

### 2.    Exhibit 12

Plaintiffs have previously filed Exhibit 12, which is already redacted, on the public docket. (Dkt. No. 76-3, at 13). Because Exhibit 12 is already public record, Plaintiffs' motion to seal Exhibit 12 is therefore denied. *See Shetty v. SG Blocks, Inc.*, No. 20-cv-550, 2021 WL 4959000, at *4, 2021 U.S. Dist. LEXIS 206465, at *10 (E.D.N.Y. Oct. 26, 2021) ("The Second

Circuit and courts within it have repeatedly found sealing improper where the relevant material was already made public.").

> 3.    **Exhibits 58, 68, and 69**

Plaintiffs' Exhibit 58 contains confidential investigation notes from a child protective services safety assessment, except for the first page, which documents Plaintiffs' claims as to the alleged false allegations contained therein. Plaintiffs' Exhibit 68 is a letter from child protective services to the Schenectady County Family Court, also marked confidential. Plaintiffs' Exhibit 69 is a collection of photographs depicting their family and home. These documents contain sensitive, embarrassing, or otherwise inflammatory information that could jeopardize the privacy interests of I.M., G.J., and other third parties. The Court finds that sealing information in these submissions is essential to preserving the aforementioned privacy interests, and in light of the manner in which private information is detailed in the documents that the parties seek to seal, redacting them is not practical. Thus, sealing exhibits 58, 68, and 69 is "essential" to serve a "higher interest." *See LeClair*, 2021 WL 2682286, at *25, 2021 U.S. Dist. LEXIS 121870, at *73-74. The Court therefore grants Plaintiffs' motion to seal Exhibits 58, 68, and 69, with the exception of page one of Exhibit 58.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Herkimer County Defendants' motion to dismiss, (Dkt. No. 85), is **DENIED** in its entirety; and it is further

**ORDERED** that Defendant Officer Madia's motion to dismiss, (Dkt. No. 87), is **GRANTED** in its entirety; and it is further

**ORDERED** that Plaintiffs' motion to seal, (Dkt. No. 90), is **GRANTED** in part and **DENIED** in part as set forth above. Exhibits 10, 68, 69, and everything except the first page of Exhibit 58 may be filed under seal, and the Court Clerk is directed to file Exhibit 12 and the first page of Exhibit 58 on the docket. The Court Clerk is directed to file Exhibits 10, 68, 69, and the remainder of Exhibit 58 under seal on the docket.

**ORDERED** that Defendant is directed to file an answer to the Third Amended Complaint in accordance with the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: <u>July 25, 2025</u>
       Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

31